FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2023 JUN 30  PM 3: 56

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| John Doe, a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>Massachusetts Institute of Technology,<br><br>Defendant. | Civil Action No. _____ |

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Doe[1] ("Plaintiff") respectfully submits this employment action against the Defendant, Massachusetts Institute of Technology ("MIT") alleging violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a). Accordingly, Plaintiff states as follows:

## PARTIES

1.  Plaintiff John Doe ("Plaintiff") is an individual who was employed by Defendant Massachusetts Institute of Technology at all relevant times to this action. Plaintiff currently resides in Salem, Massachusetts.

2.  Defendant Massachusetts Institute of Technology ("MIT") is a private corporation whose principal place of business is in Cambridge, Massachusetts, and a federally-funded private university with a total student body of more than 11,000 students.

## JURISDICTION AND VENUE

---

[1] John Doe has filed a Motion to Proceed Under Pseudonym concurrently with the filing of this Complaint.

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under federal law, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Defendant MIT is incorporated and maintains its principal place of business in this judicial district, the conduct giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

5.  Between about November 2018 and May 2020, Plaintiff was employed by the Massachusetts Institute of Technology ("MIT") as an administrative staff member in a scientific laboratory (the "Laboratory") involved in educating graduate and undergraduate students, where he performed satisfactorily at his job duties.

6.  The laboratory was pervaded with sex- and gender-based discrimination. Among other actions, Plaintiff's supervisor ("Plaintiff's Supervisor") violated MIT's Consensual Sexual or Romantic Relationships policy by supervising two women with whom he had sexual or romantic relationships and making laboratory members aware of that fact; relentlessly excluded scientists who were not white or Asian men from virtually all types of professional opportunities like conference participation or research publication credit, a pattern that was evident both statistically and anecdotally; and failed to supervise a doctoral student who regularly made offensive gender-based remarks and used offensive epithets around the laboratory.

7.  Furthering the hostile and discriminatory work environment, Plaintiff's Supervisor continued to work with a former MIT director, Joichi Ito, and to cause members of the Laboratory to do so, after Ito had resigned from MIT in connection with Ito's association with Jeffrey Epstein. Doing so, Plaintiff's Supervisor disregarded the repeated concerns of his

laboratory employees that the conduct was offensive to survivors of sexual abuse and assault, who are more likely to be women and gender minorities, and he disregarded written accounts from hundreds across MIT that Ito's continued involvement was humiliating and offensive and that it interfered in workers' ability to participate in MIT's educational programs. This impact of Ito's involvement in the Laboratory differentially impacted at least two individuals in the laboratory were such survivors, including Plaintiff.

8. Additionally, Plaintiff's Supervisor violated the spirit and letter of MIT's Affirmative Action Serious Search Policies, which then implemented MIT's Affirmative Action Plan as required of it as a federal contractor, by misusing MIT's temporary hiring mechanisms to hire almost exclusively White and Asian male technical workers from his personal network. The practice comprised about a dozen hires over multiple years and, upon information and belief, continues to this day.

9. Upon information and belief, the ability for MIT supervisors to sidestep the spirit and letter of affirmative action requirements continues today.

10. Plaintiff reported his concerns of unlawful discrimination in the Laboratory, as well as violations of MIT's affirmative action policies, in a series of meetings with Plaintiff's Supervisor between about late September 2019 and January 2020. These meetings coincided with reporting and investigation of Jeffrey Epstein's association with MIT and Joichi Ito's involvement in it, as well as Plaintiff's work on a conference led by Supervisor that had extremely gender-skewed participation exclusive of women, a fact remarked on by its participants to Plaintiff.

11. Around the start of Plaintiff's protected activity in October 2019, Plaintiff's Supervisor began demeaning conduct like asking Plaintiff to arrive early at the Laboratory to

watch his dog, and berating Plaintiff in front of colleagues for being late to work when Plaintiff was virtually always the first in the office.

12.  In January 2020, nearly coincident with the release of MIT's investigative report about Jeffrey Epstein and Joichi Ito, Plaintiff's Supervisor informed a scientist in the Laboratory ("Scientist 1") that he intended to terminate Plaintiff. He informed Scientist 1 that he wished to avoid legal action against him for doing so, and asked Scientist 1 for advice on that topic and asked Scientist 1 to communicate with him about the decision to terminate Plaintiff using a USB drive, then delete the communications. Within about a day or even hours of Scientist 1 using this USB communication plan, Plaintiff's Supervisor contacted MIT Human Resources about placing Plaintiff on a Performance Improvement Plan (PIP) intended to cover up the termination decision that Plaintiff's Supervisor had already made.

13.  Contrary to any notion of Plaintiff's underperformance, Plaintiff's Supervisor and one of his staff members invited Plaintiff to continue additional work in the laboratory at the end of the PIP.

14.  The week of May 20, 2020, Plaintiff raised another concern to Plaintiff's Supervisor about the transition of temporary workers to regular staff positions, to better conform with the proper use of temporary worker mechanisms at MIT. Plaintiff terminated Plaintiff on May 20, 2020.

15.  Upon information and belief, shortly after Plaintiff's termination, Plaintiff's Supervisor's staff member ("Staff Member 1"), with his accord, published false and defamatory statements about Plaintiff's work performance on the laboratory's messaging system to dozens of colleagues.

16. Additionally, upon information and belief Plaintiff's Supervisor and Staff Member 1 convened a staff meeting to imply falsely that mental health issues were related to Plaintiff's termination.

17. Upon information and belief, around the summer of 2020, Staff Member 1 warned Scientist 1 not to raise concerns of misconduct to Plaintiff's Supervisor or reprisals would occur, using words to the effect of "look what happened to [John Doe]", comparing Plaintiff's retaliatory termination to one in the staff member's previous workplace.

18. Scientist 1 reported to a federal administrative agency in early 2021 that Plaintiff had been retaliated against, a claim that MIT did not promptly and equitably investigate.

## CLAIMS

### COUNT I
### Violation of Title IX – Retaliation
(Against Defendant MIT)

1. Plaintiff incorporates by reference the preceding allegations.

2. Title IX prohibits MIT from retaliating against an employee in its educational programs who complains of or opposes of sex discrimination.

3. Between about September 2019 and April 2020, Plaintiff engaged in protected activity by reporting discriminatory conduct in the research laboratory to his supervisor.

4. In response to Plaintiff's reports, MIT, through its agents including Plaintiff's supervisor, retaliated against Plaintiff by terminating his employment, circulating false information about his work performance and the reasons for his dismissal, and organizing of a staff meeting to imply that mental health issues were a factor in his termination.

5. These actions taken by MIT were motivated by an intent to retaliate against Plaintiff's for his internal complaints of discrimination, in violation of Title IX of the Education Amendments Act of 1972.

6. With deliberate indifference, Defendant knowingly maintains policies and practices fostering a retaliatory environment, including inadequate training and oversight of laboratory supervisors, insufficient recourse for temporary workers, and a policy colloquially known as "the professor is always right," in violation of Title IX of the Education Amendments Act of 1972.

7. As a result of MIT's actions, Plaintiff has suffered damages, including lost wages and benefits, lost job opportunities, potential future wage loss, emotional distress and physical sickness, and damage to his reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award Plaintiff damages for lost wages and benefits and other compensatory damages resulting from the alleged claims;

C. Award Plaintiff damages for emotional distress and physical sickness resulting from the alleged claims;

D. Award Plaintiff punitive, exemplary, nominal, and treble damages, if applicable;

E. Award Plaintiff prejudgment and post-judgment interest on all amounts awarded;

F. Award Plaintiff reasonable attorney's fees and costs;

G. Issue an injunction ordering Defendant to implement and enforce policies, procedures, and training programs aimed at eliminating and preventing the systemic issues that caused and perpetuated the alleged misconduct, including but not limited to, promoting equal opportunity, preventing discrimination and retaliation, and ensuring compliance with relevant laws and regulations; and

H. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED

DATED: June 30, 2020

By: */John Doe/*

John Doe