# EXHIBIT A

## Exhibit A. Case and Proceeding Abbreviations

### Purpose and Scope

This exhibit collects the proceeding abbreviations used in the other exhibits that consolidate record citations.

This information is adapted from Plaintiff's April 14, 2026 ex parte in camera filing and has been prepared in public-facing form. The principal modification is that it removes specific administrative identifiers not yet reflected on the public docket, while preserving the record-citation structure otherwise used in the accompanying exhibits.

### Case and Proceeding Abbreviations

The proceedings share an identical nexus of facts: the same MIT laboratory, the same central supervisor, overlapping allegations, overlapping witnesses, and an overlapping time period.

Since April 2021, the parties have prosecuted this nexus of claims for approximately five years across six administrative-agency proceedings (two MCAD matters, one EEOC charge, one OSHA whistleblower matter, and two DOD OIG whistleblower-reprisal matters) and six federal-court filings (three district-court cases and three First Circuit appeals).

**Federal district court cases.**

- 11490 = *John Doe v. MIT*, No. 1:23-cv-11490 (D. Mass.) (this case).
- 11935 = *Jane Doe v. John Roe and MIT*, No. 1:23-cv-11935 (D. Mass.) (predecessor of 10949).
- 10949 = *Jane Smith v. John Roe and MIT*, No. 1:25-cv-10949 (D. Mass.) (refiling of 11935 after Jane Doe changed her name).

**Federal appeals.**

- 24-1828 = First Circuit appeal by Jane Doe from the dismissal of 11935.
- 24-1888 = First Circuit appeal by John Doe from the pseudonymity and reconsideration rulings in 11490.
- 25-1465 = First Circuit appeal by Jane Doe and John Doe from the Rule 60 and intervention rulings in 11935.

Status note: no appeal ever reached the appellants' merits briefings; every one was dismissed for procedural reasons.

**Administrative proceedings.**

- Jane MCAD = related-case plaintiff's MCAD discrimination and retaliation matter under Mass. Gen. Laws c. 151B, filed in 2021.
- John MCAD = Plaintiff's MCAD discrimination and retaliation matter under Mass. Gen. Laws c. 151B, filed in 2022.
- John EEOC = Plaintiff's EEOC charge corresponding to the same discrimination matter, filed in 2022.

- Jane OSHA = related-case plaintiff's OSHA whistleblower matter under SOX and the Taxpayer First Act, filed in 2021.
- John OIG = Plaintiff's DOD OIG whistleblower-reprisal matter under 41 U.S.C. § 4712, filed in 2023.
- Jane OIG = related-case plaintiff's DOD OIG whistleblower-reprisal matter under 41 U.S.C. § 4712, filed in 2023.

**Document types. Dkt.** = docket entry; **Charge** = Charge of Discrimination; **Pos. Stmt.** = Position Statement; **Rebuttal** = Rebuttal to Position Statement; **FAC** = First Amended Complaint; **Compl.** = Complaint.

**Status Note**

**Refiling of Jane Doe Action**

Jane Smith is the same plaintiff who previously proceeded as Jane Doe in 11935 and later refiled in 10949 after changing her name, following non-merits dismissal without prejudice. 11935 Dkt. 43 at 8–9; 10949 Dkt. 1.

**Relatedness, Consolidation, and Seeking Joint Counsel**

The Young Court invited a formal relatedness motion in the predecessor case, stating: "You can go ahead and file such a motion." 11935 Dkt. 43 at 7, 20:17–20. Judge Kobick later relied on those statements in reassigning 10949 to Judge Young on relatedness grounds. 10949 Dkt. 14 at 2. Jane Doe anticipates filing a motion to designate the cases as related, and/or for complete consolidation, depending on advice of counsel shortly after 10949 is administratively reopened.

As of the current filing posture, 10949 is administratively closed until April 21, 2026 to permit Jane Smith to obtain counsel and file a notice of appearance. 10949 Dkt. 41. The earlier Young-court record likewise reflects that Jane Doe had represented that she had or would retain counsel. 11935 Dkt. 34.

John Doe has represented in this Court that he seeks joint representation with Jane Smith and that the time for Jane Smith to obtain counsel in 10949 has not yet expired. Ex Parte TRO Motion ¶ 17; Doe Decl. ¶¶ 25–27.

**Administrative Agency Claims Exhausted and Timely in Federal Court**

John and Jane's present position is that the administrative matters identified above were timely filed and are administratively exhausted, or deemed exhausted where applicable, so that the claims may proceed to merits adjudication in federal court. *See* Second Amended Complaint ¶¶ 37, 108, 112, 121, 124.

**Procedural Posture of the Federal District-Court Cases**

**11490 · *John Doe v. MIT*: past the pleading stage and in discovery.**

The case is past all Rule 12 motion-to-dismiss practice and is now in discovery. MIT's initial Rule 12(b)(6) motion directed at the original complaint was denied as moot once Plaintiff filed the First Amended Complaint. 11490 Dkt. 12 (Oct. 18, 2023) (MIT's Motion to Dismiss for Failure to State a Claim); 11490 Dkt. 21 (Jan. 2, 2024) (Saris, J.) (Electronic Order denying Dkt. 12 as moot). MIT's second motion directed at the First Amended Complaint, brought under Rule 41(b), was denied on the merits. 11490 Dkt. 26 (Jan. 9, 2024); 11490 Dkt. 38 (Feb. 12, 2024) (Saris, J.) ("MIT's Motion to Dismiss under Fed. R. Civ. P. 41(b) (Dkt. 26) is denied. MIT shall answer the complaint or move to dismiss under Fed. R. Civ. P. 12 within 2 weeks."). MIT elected to answer rather than move again under Rule 12. 11490 Dkt. 42 (Feb. 26, 2024) (ANSWER to Amended Complaint and Demand for Jury Trial). The Court has since directed the parties to confer on a discovery schedule. 11490 Dkt. 100 (Apr. 9, 2026) (Cabell, M.J., Clerk's Notes at Status Conference: "If Mr. Doe does plan on continuing with the case he should confer with Mr. Lapp re a discovery schedule in the near future."). Plaintiff's position is therefore that 11490 is past Rule 12, past the answer, and ready for discovery as of the date of this filing.

**10949 · *Jane Smith v. Roe and MIT*: past every Rule 12(b)(6) ground except timeliness; on the remaining Rule 10 / Rule 17 question, Plaintiff has submitted evidence that "Jane Smith" is her true legal name, changed for a legitimate purpose.**

10949 is the refiling of 11935 after the earlier action's non-merits dismissal. 11935 Dkt. 36; 10949 Dkt. 1. MIT moved to dismiss on multiple grounds, including timeliness and a challenge under Federal Rules of Civil Procedure 10(a) and 17(a) contending that "Jane Smith" was a pseudonym. 10949 Dkts. 9, 10. Plaintiff opposed. 10949 Dkt. 25.

On March 5, 2026, Judge Young issued a show-cause order addressing the Rule 10 / Rule 17 question and directing Plaintiff to file an affidavit and supporting documentation as to her compliance with those rules. 10949 Dkt. 39.

On the name question, Plaintiff has filed a sealed declaration with supporting exhibits establishing that "Jane Smith" is her true legal name, adopted through a common-law name change for safety reasons unrelated to this litigation, and that the Rule 10 / Rule 17 challenge therefore fails. Declaration of Jane Smith in Response to Order to Show Cause; 10949 Dkt. 39 (show-cause order). Massachusetts recognizes that "a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this is done for an honest purpose." *Merolevitz, Petitioner*, 320 Mass. 448, 450 (1946); *see also Buyarsky, Petitioner*, 322 Mass. 335, 338 (1948) (name-change statute "does not restrict a person's choice of name but aids him in securing an official record"). Washington, where Plaintiff resides, likewise recognizes a common-law name change. *Doe v. Dunning*, 87 Wash. 2d 50, 53 (1976). On timeliness, Plaintiff's position is that the Massachusetts Savings Statute, Mass. Gen. Laws ch. 260, § 32, establishes timeliness of the refiled claims per a simple date-based calculation.

10949 is administratively closed until April 21, 2026 to permit Plaintiff to obtain counsel, with the motion to dismiss to be decided after reactivation. 10949 Dkts. 41, 42.

# EXHIBIT B

# Exhibit B. Table of Individuals with Privacy Interests

## Scope and Purpose

This exhibit identifies 54 distinct individuals across the record in this case and closely connected proceedings whose privacy interests could be compromised, in many cases irreversibly, by docketing linked information on the public docket without some form of protective order.

For purposes of this exhibit, "linked information" tracks the FERPA definition of "personally identifiable information," which includes information that, "alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." 34 C.F.R. § 99.3 (definition of "Personally Identifiable Information"); *see also* 20 U.S.C. § 1232g(b)(1). Applied here, "linked information" means information that permits identification of an individual when combined with other available facts (including the laboratory name, Plaintiff's true name, the supervisor's identity, or other details already in the record), such that identification becomes straightforward once those facts are placed together on the docket. The FERPA definition is invoked deliberately: the record in this case and the related proceedings concerns a university laboratory and a substantial number of FERPA-protected students (*see, e.g.,* Category I entries 1–9; Category V entries 16–24), and Plaintiff has consistently raised the FERPA standard as the governing reference point for nonparty-student privacy. 11490 Dkt. 47 p. 5; 11490 Dkt. 54 p. 5; 11490 Dkt. 66 p. 2; *see* Exhibit C §§ C.3, E.4, K.1.

This table is adapted from Exhibit F to Plaintiff's Ex Parte Motion for Temporary Restraining Order filed April 14, 2026 in 11490 and has been prepared in public-facing form. Case, appeal, and proceeding abbreviations used below (e.g., 11490, 11935, 10949, Jane MCAD, John MCAD, Jane OSHA, John OIG, Jane OIG) are collected in Exhibit A and are not repeated here.

**Allegations only.** All references in this table to individuals who "accused," were "accused of," engaged in "misconduct," "committed," "harassed," "excluded," "facilitated," or the like describe unproven allegations drawn from the cited record materials. Nothing in this exhibit is a finding of fact; no allegation identified here has been adjudicated. Where a record citation describes conduct, the reader should treat it as an allegation, whether or not the word "alleged" appears in the cell.

## Individuals Organized by Privacy-Interest Category

**Category I. Victims of Sexual Assault or Individuals Whose Intimate Information Has Been Disclosed (9 individuals: entries 1–9)**

| # | Role | Basis of Privacy Interest | Record Citations |
|---|------|---------------------------|------------------|
| 1 | Undergraduate visiting student sexually assaulted by a graduate-student supervisor | FERPA-protected student: sexual-assault victim with criminal implications; intimate information disclosed | Jane MCAD Charge at 6 |
| 2–6 | Five additional undergraduate students who had sexual contact with the same graduate-student supervisor | FERPA-protected; supervisor-sexual-contact with criminal implications; intimate information disclosed | Jane MCAD Charge at 4–7 |
| 7 | Female graduate student involved in a publication dispute, described as having a "flirty relationship" with a faculty supervisor | FERPA-protected; intimate information disclosed; Title IX-related witness | Jane MCAD Charge at 9–10 |
| 8–9 | Two women recruited from dating websites by a research-scientist supervisor in violation of MIT's Consensual Sexual or Romantic Relationships Policy | Intimate information disclosed; supervisor disclosed the relationships within the laboratory | 11490 Dkt. 1 at 2; 11490 Dkt. 69-1 at 7; 11935 Dkt. 15 at 7–8; 10949 Dkt. 1 at 8; 10949 Dkt. 10-2 at 8; John MCAD Charge at 2; John MCAD Rebuttal at 5 |

**Category II. Individuals Accused of Sexual Assault or Sexually Explicit Conduct with Potential Criminal Implications (4 individuals: entries 10–13)**

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 10 | Doctoral student accused of sexual assault, harassment, and predatory behavior toward undergraduates | FERPA-protected; accused with criminal implications; Title IX respondent | Jane MCAD Charge at 4–7; Jane MCAD Pos. Stmt. at 10 |
| 11 | MIT faculty member accused of sexual assault (2003 swimming-pool incident) | Accused with criminal implications | Jane MCAD Charge at 3, 5; Jane MCAD Pos. Stmt. at 10 |
| 12 | MIT faculty member, respondent in a discrimination complaint, accused of sexually explicit workplace behavior, thesis misattribution, retaliation, and nonconsensual distribution of personal records | Accused with criminal implications; intimate information disclosed | Jane MCAD Charge at 1–2, 6–14; Jane MCAD Pos. Stmt. at 2–3, 5, 10–11; 11935 Dkt. 15 at 27; 10949 Dkt. 1 at 29; 10949 Dkt. 10-2 at 28 |
| 13 | Unnamed individual who assaulted Plaintiff | Identity unknown; accused with criminal implications | 11490 Dkt. 36 at 2; 11490 Dkt. 1 at 3 |

## Category III. Individual Protected by Pseudonym Order in Active Federal Litigation (1 individual: entry 14)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 14 | Plaintiff's former supervisor, a principal research scientist at MIT, currently designated by the pseudonym "John Roe" by order of another court in this District (Young, J.) and an active defendant under that pseudonym in 10949. Respondent in two MCAD matters; subject of OIG and OSHA complaints. | Parallel federal pseudonym order; conflict among sealed records and the Young court order. His full legal name, title, department, personal telephone number, and laboratory name appear throughout sealed filings in this case. Disclosure of the laboratory in this case would undermine the parallel pseudonym order in the related federal litigation. | 11490 Dkt. 1 at 2–5; 11490 Dkt. 19 at 2–15; 11490 Dkt. 36 at 1–2; 11490 Dkt. 54 at 3–4; 11490 Dkt. 69-1 at 6–10; 11490 Dkt. 82 at 4–5; 11490 Dkt. 86 at 1–3; 10949 Dkt. 1 (throughout); 10949 Dkt. 10-2 (throughout) |

## Category IV. Individual Connected to Sexual Exploitation of Minors (1 individual: entry 15)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 15 | Former director of a major MIT laboratory who resigned in connection with facilitating a convicted sex offender's access to the MIT campus | Connection to sexual exploitation of minors; ongoing impact on assault survivors; his continued involvement in research activities after resignation affected survivors of sexual assault and abuse in the workplace | 11490 Dkt. 1 at 2–3; 11490 Dkt. 19 at 7–8, 14–15; 11490 Dkt. 36 at 2; 11490 Dkt. 54 at 3–4; 11490 Dkt. 69-1 at 7; 11935 Dkt. 15 at 9–10, 18–19, 28–29; 10949 Dkt. 1 at 10–11, 13, 19–20; 10949 Dkt. 10-2 at 10–11, 19–20, 29 |

## Category V. Additional FERPA-Protected Students (9 individuals: entries 16–24)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 16 | Doctoral student (identified by initials in the record) accused of gender-based harassment, including invasive questions about colleagues' reproduction and contraception; excluded women from scientific publications | FERPA-protected; Title IX respondent | Jane MCAD Charge at 21–22; John MCAD Charge at 2; John MCAD Rebuttal at 8 |
| 17 | Woman Master's student and gender-minority individual | FERPA-protected; Title IX witness; victim of discriminatory neglect whose discomfort with lab conditions was disregarded | 11935 Dkt. 15 at 18; 10949 Dkt. 1 at 10–11, 19; Jane MCAD Charge at 31 |
| 18 | Student involved in a publication dispute over thesis misattribution | FERPA-protected; Title IX-related participant | Jane MCAD Charge at 10–14; 11935 Dkt. 15 at 27; 10949 Dkt. 1 at 29 |
| 19 | Student who witnessed sexually explicit workplace behavior by a faculty member | FERPA-protected witness | Jane MCAD Charge at 9 |
| 20 | Student involved in a disputed publication and conference abstract | FERPA-protected | Jane MCAD Charge at 13–14 |
| 21 | Student whose thesis was supervised by the respondent (entry 14), subject to potential pressure regarding a commercial venture | FERPA-protected; potential coercion | 11935 Dkt. 15 at 20; 10949 Dkt. 1 at 21; 10949 Dkt. 10-2 at 21 |
| 22 | Student involved in a politically sensitive project implicating export-law concerns | FERPA-protected; export-law implications | 11935 Dkt. 15 at 22; 10949 Dkt. 1 at 23 |
| 23 | MIT graduate student who wrote in the campus newspaper | FERPA-protected | John MCAD Rebuttal at 6 |
| 24 | Dormitory resident who reported the sexual assaults described in entries 1 and 2–6 alongside the complainant | Witness to sexual assault; reporter of misconduct | Jane MCAD Charge at 6 |

**Category VI. Faculty Accused of Discriminatory Conduct (2 individuals: entries 25–26)**

| # | Role | Basis | Record Citations |
|---|------|-------|-----------------|
| 25 | Prominent MIT faculty member accused of maintaining a website expressing demeaning views about women scientists; retracted support for a complainant after learning of her administrative complaints; excluded a complainant from key meetings | Accused in discrimination proceedings | Jane MCAD Charge at 18, 20; John MCAD Pos. Stmt. at 29; 11935 Dkt. 15 at 18, 26; 10949 Dkt. 1 at 19, 28 |
| 26 | MIT faculty member; witness to a pattern of adverse treatment of women at MIT | Sensitive career information disclosed (tenure denial, laboratory closure); Title IX witness | Jane MCAD Charge at 15–16; Jane OSHA Complaint at 9 |

## Category VII. Witnesses and Participants in Confidential Discrimination Proceedings (7 individuals: entries 27–33)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 27 | Research scientist; comparator in discrimination proceedings | Witness in discrimination proceedings; salary and compensation information disclosed | Jane MCAD Charge at 23–24; Jane MCAD Pos. Stmt. at 28–29; 10949 Dkt. 1 at 19–20, 22–23, 29–31; 11935 Dkt. 15 at 17, 19–22; Jane OSHA Complaint at 13, 17 |
| 28 | Research scientist who experienced similar career roadblocks and departed after mistreatment; provided documents revealing potential misconduct; likely the "one other employee" who raised gender-discrimination concerns | Witness; retaliation exposure | Jane MCAD Charge at 22, 25; 11935 Dkt. 15 at 12; Jane OSHA Complaint at 18 |
| 29 | Junior male researcher who received preferential treatment over more qualified female candidates | Comparator; educational record disclosed | Jane MCAD Charge at 28–29; 11935 Dkt. 15 at 17–18; 10949 Dkt. 1 at 18–19 |
| 30 | Male researcher used as comparator to illustrate differential treatment of women | Comparator | Jane MCAD Charge at 24 |
| 31 | Male participant who replaced Plaintiff despite lower qualifications; paid from private-company proceeds in asserted violation of conflict-of-interest guidelines | Personal financial information disclosed (salary and family-expense details) | Jane MCAD Charge at 16, 30; 10949 Dkt. 1 at 22; Jane OSHA Complaint at 13 |
| 32 | Witness to sexually explicit workplace behavior in a faculty member's laboratory | Witness | Jane MCAD Charge at 8–9 |
| 33 | Senior researcher who witnessed pretextual conduct by the respondent supervisor and observed reinstated publication credit after objections | Witness | 11935 Dkt. 15 at 17, 22; 10949 Dkt. 1 at 18, 22; Jane OSHA Complaint at 17 |

## Category VIII. Administrative Staff Witnesses in Confidential Proceedings (5 individuals: entries 34–38)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 34 | Departmental HR officer; present at Plaintiff's PIP and termination meetings; denied retaliation allegation without investigation | Named by full name in the administrative complaint filed as a sealed exhibit in this case (11490 Dkt. 69-1); Title IX and retaliation witness | 11490 Dkt. 69-1 at 8; Jane MCAD Pos. Stmt. at 19; John MCAD Charge at 3; John MCAD Pos. Stmt. at 3, 27, 31; John MCAD Rebuttal at 3; 11935 Dkt. 15 at 25–26; 10949 Dkt. 1 at 27–28 |
| 35 | Administrative staff member; key witness in Title IX and discrimination proceedings | Witness; personal information disclosed (family relationship to a respondent, maternity leave, prior employment) | Jane MCAD Charge at 20, 22, 26–28; John MCAD Pos. Stmt. at 3–4, 7, 10; John MCAD Rebuttal at 12–13; 11490 Dkt. 1 at 4–5; 11490 Dkt. 19 at 9–11; 10949 Dkt. 1 at 9, 19 |
| 36 | Administrative staff member; PIP evaluator; participant in ombudsperson meetings | Participant in confidential process | Jane MCAD Charge at 27; John MCAD Pos. Stmt. at 27–30 |
| 37 | MIT ombudsperson who participated in confidential dispute resolution; Title IX-related participant | Confidential ombuds process | 11935 Dkt. 15 at 27; 10949 Dkt. 1 at 29 |
| 38 | MIT business-development administrator who recalled that Plaintiff's termination reflected what the supervisor "himself, wanted" | Witness | 11935 Dkt. 15 at 16; 10949 Dkt. 1 at 16 |

## Category IX. External Candidate Discriminatorily Rejected (1 individual: entry 39)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 39 | Highly qualified external scientist (Caltech, LSE, Harvard Business School; decades in the exact technical area) whose candidacy was summarily dismissed by the respondent supervisor in favor of a less-qualified male candidate (entry 29) | Personal qualifications and employment history disclosed | Jane MCAD Charge at 28; 10949 Compl. ¶¶ 69e, 82 |

**Category X. Participants in Disputed Publications Connected to Title IX Proceedings (2 individuals: entries 40–41)**

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 40–41 | Two co-authors on a disputed conference abstract that is the subject of a thesis-misattribution allegation in discrimination proceedings | Title IX proceedings participants | Jane MCAD Charge at 13 |

**Category XI. Family Members with Privacy Interests (4 individuals: entries 42–45)**

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 42 | Mother of the related-case plaintiff | Medical information disclosed (hospitalization, treating physicians, conditions) in connection with an extension motion | 11935 Dkt. 26-1 at 1–2 |
| 43 | Wife of the respondent supervisor (entry 14) | Personal relationships disclosed (college roommate of key witness entry 35) | John MCAD Rebuttal at 13 |
| 44 | Sister of the Jane OSHA complainant; consulted about data and cybersecurity concerns in corporate-academic research | Consultation disclosed | Jane OSHA Complaint at 12 |
| 45 | Father of a prominent MIT faculty member (entry 25); accused of benefiting from the respondent supervisor's misuse of MIT resources | Accused by association | 11935 Dkt. 15 at 20; 10949 Dkt. 1 at 21 |

## Category XII. Additional Individuals with Privacy Interests (9 individuals: entries 46–54)

| # | Role | Basis | Record Citations |
|---|------|-------|------------------|
| 46 | Politically active technology donor and co-founder of a major social-media company; involved in a politically sensitive AI-and-elections project | Financial and donor information disclosed | 11935 Dkt. 15 at 12; 10949 Dkt. 1 at 13; Jane MCAD Charge at 18–19 |
| 47–48 | Two former campaign operatives hired on partisan criteria for the politically sensitive AI project | Personal employment information disclosed | 11935 Dkt. 15 at 12; 10949 Dkt. 1 at 13 |
| 49 | Co-chair of an academic conference (professor at another institution) accused of treating a female co-chair as an administrative assistant | Accused in discrimination narrative | Jane MCAD Charge at 27; 11935 Dkt. 15 at 20; 10949 Dkt. 1 at 20 |
| 50–51 | Two members of an all-male conference leadership team accused of preparing a 90% male reviewer list and enabling the exclusion of women | Accused in discrimination narrative | 11935 Dkt. 15 at 18; 10949 Dkt. 1 at 18 |
| 52 | External scientist accused of research fraud, including data-sharing violations; the respondent supervisor is alleged to have failed to report the fraud through proper channels | Accused of research fraud | Jane OSHA Complaint at 12–13 |
| 53 | MIT worker paid from private-company proceeds rather than MIT funds, in claimed evidence of conflict-of-interest violations | Compensation arrangement disclosed | Jane OSHA Complaint at 13 |
| 54 | Woman staff engineer at a startup affiliated with the respondent supervisor's laboratory; worker in a gendered labor structure | Gendered-labor narrative | 11935 Dkt. 15 at 5; 10949 Dkt. 1 at 5 |

# EXHIBIT C

### Exhibit C. Privacy Authorities and Grounds

### Purpose and Scope

This exhibit consolidates the record citations for every basis on which privacy protections (through sealing or pseudonymity) have been sought or ordered in this case and related proceedings. Proceeding abbreviations (e.g., 11490, 11935, 10949, 24-1888, Jane MCAD, John MCAD, John OIG, Jane OIG, Jane OSHA) are defined in Exhibit A.

### A. First Amendment: Anonymous Civic Participation and Whistleblower Identity

**A.1. Election-interference whistleblowing.** The related-case FAC alleges that the respondent supervisor solicited approximately $4 million from a politically active donor for a project "aimed at influencing the 2020 presidential election using AI from his lab," including accepting funds, hiring former campaign operatives on partisan criteria, and providing engineering and unreleased MIT research to a registered Political Action Committee. Reporting alleged election interference by a major academic institution implicates core First Amendment concerns.

- 10949 (re-filed FAC) ¶ 47 (describing the supervisor's solicitation of funds from a politically active donor for a "Political Project" "aimed at influencing the 2020 presidential election using AI from his lab," "accepting funds," "hiring former campaign operatives based on a partisan 'hiring thesis,'" and "providing engineering and unreleased MIT research to a registered Political Action Committee").
- 10949 ¶¶ 47–49, 56, 79 (remaining Political Project allegations: directing MIT research toward partisan objectives; PAC coordination; retaliation tied to worker objections).
- 11935 Dkt. 15 (FAC) ¶¶ 47–56 (same Political Project allegations in the predecessor federal action, including paragraphs 47–49, 56).
- 11490 Dkt. 54 (Sealed Memo) pp. 3–4 (characterizing the underlying matters as involving "interference in an election by the same actors" alongside associated Epstein- and sexual-misconduct-related allegations).
- John OIG (filed May 19, 2023), pp. 1–3 (whistleblower-reprisal context: protected disclosures covering federal-contractor and federal-grant compliance violations by the same PI).
- Jane OIG (filed Oct. 15, 2023), pp. 1–2 (protected disclosures against the same PI, establishing overlapping factual nexus with the Political Project allegations).

**A.2. Jeffrey Epstein accountability.** Both FACs allege that the respondent supervisor integrated Joichi Ito into laboratory activities after Ito resigned from MIT in September 2019 following reports that he had invited Jeffrey Epstein to MIT, solicited his funds, and concealed the project. Plaintiff's sealed memo described the matters as involving allegations concerning MIT's associations with Epstein, handling of sexual-misconduct and diversity issues, and election interference by the same actors. Reporting those matters is presented as civic participation on issues of public concern.

- 11490 Dkt. 19 (FAC) ¶¶ 10, 13, 15 (Plaintiff's allegations concerning Ito post-resignation integration and Epstein-related context).

- **11490 Dkt. 36 p. 2** (Plaintiff's memorandum in opposition to motion to dismiss, describing continuation of Ito's laboratory work after Epstein-linked resignation and the impact on survivors).
- **11490 Dkt. 54** (Sealed Memo) pp. 3–4 (describing the underlying matters as involving MIT's "associations with Jeffrey Epstein," "alleged mishandling of sexual misconduct and diversity issues," and "interference in an election by the same actors").
- **11490 Dkt. 69-1 p. 7** (sealed opposition describing respondent supervisor "immediately continuing to involve Joichi Ito, former Director of the MIT Media Lab, in the lab's research activities immediately after Ito had resigned from MIT in connection with bringing sexual predator Jeffrey Epstein onto campus").
- **11935 Dkt. 15** (FAC) at 9 & ¶¶ 37–41 (section on "Roe's Association With Joichi Ito Contributed A Hostile Work Environment Based On Gender And Gender Harassment").
- **10949** ¶¶ 37–41 (same Ito-integration allegations in the re-filed complaint).
- **10949 Dkt. 1** at 10 (heading and paragraph identifying Ito's association as contributing to the gender-based hostile work environment).
- **John MCAD Charge** at 2 ¶ (d) (identifying Ito's continued involvement in laboratory research activities "immediately after Ito had resigned from MIT in connection with bringing sexual predator Jeffrey Epstein onto campus in 2019," quoting MIT's executive committee description of "the treatment of women" and "significant damage to the MIT community, particularly victims of sexual assault and abuse").
- **John MCAD Rebuttal** at 5 § C (section titled "Joichi Ito ... and the Hostile Work Environment in [supervisor's] Lab"; reciting that "Mr. Ito resigned from MIT amid controversy over ties to convicted sex offender Jeffrey Epstein").
- **Jane OSHA Complaint** at 18 (identifying a broader institutional pattern of retaliation against employees who raise Epstein-linked concerns and noting MIT's public commitments to strengthen whistleblower protections following the Epstein disclosures).
- **Jane OSHA Response** at 64 (reiterating the post-resignation integration of Ito into the laboratory and the institutional response to Epstein-connected misconduct).

**A.3. Federal-contractor whistleblowing (OIG).** Plaintiff and the related-case plaintiff each filed formal whistleblower-reprisal complaints with the DOD Office of Inspector General under 41 U.S.C. § 4712. MIT is a federal contractor and federal grantee. The complaints allege retaliation for reporting fraud, waste, and abuse in connection with DOD-funded research, including potential misuse of federal research funds, research-fraud-adjacent conduct, and conflict-of-interest and affirmative-action violations tied to federally funded grants on which the respondent supervisor was a Principal Investigator.

- **John OIG** (filed May 19, 2023), pp. 1–3 (identifying respondent as PI on multiple DOD grants; invoking 41 U.S.C. § 4712; listing reported violations of Executive Order 11246, 30 FR 12319, Section 503 of the Rehabilitation Act of 1973 (29 U.S.C. § 793), VEVRAA (38 U.S.C. § 4212), FAR 22.8 (48 CFR 22.8), and FAR 52.222-35–37).

- **Jane OIG** (filed Oct. 15, 2023), pp. 1–2 (identifying employment as Research Scientist and Director of Special Projects; invoking 41 U.S.C. § 4712 and reporting violations of EO 11246, Section 503 of the Rehabilitation Act, wage-and-hour law, misuse of grant funds, the Uniform Rules at 2 C.F.R. § 200, and DOD grantee rules).
- 41 U.S.C. § 4712(c) (protected-disclosure statutory framework).

**A.4. Whistleblowing through OSHA (SOX / Taxpayer First Act).** The related-case plaintiff filed a whistleblower-retaliation complaint with OSHA under the Sarbanes-Oxley Act and the Taxpayer First Act, alleging research-related misconduct, data-sharing violations, misuse of federal grant funds, and conflict-of-interest violations in connection with the same MIT laboratory.

- **Jane OSHA**, Case No. 1-0765-21-050 (filed Apr. 13, 2021), acknowledged by OSHA in correspondence dated May 25, 2021 (identifying jurisdiction under SOX, 18 U.S.C. § 1514A, and § 1405 of the Taxpayer First Act, 26 U.S.C. § 7623(d)).
- 18 U.S.C. § 1514A(b); 26 U.S.C. § 7623(d).
- **10949** ¶¶ 47–48 (allegations of misuse of federal grant funds and conflict-of-interest conduct in the same laboratory).

**A.5. Self-identification as whistleblowers.** The related-case FAC expressly identifies Plaintiff as a "whistleblower" and alleges that MIT's policies "increased risks for whistleblowers, lacking transition funding, applying a flawed 'professor is always right' standard." **10949** ¶¶ 88(d), 91; **11490** Dkt. 2-1 (Doe Decl.) at 2 ¶ 5.

**A.6. The individuals are not public figures.** While the matters at issue are of public concern, the individuals whose identities would be exposed are not public figures. Plaintiff and Jane Smith are research workers who reported institutional misconduct through available channels. This bears on the balance between public access and associational or reporting interests at the present stage of the case. **11490** Dkt. 19 (FAC) ¶¶ 5–22; **10949** ¶¶ 9–22.

**Significance.** The Supreme Court has recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association" as direct prohibition. *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). "[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). Where a "reasonable probability" exists that compelled disclosure will subject individuals "to threats, harassment, or reprisals," the First Amendment requires exemption. *Buckley v. Valeo*, 424 U.S. 1, 74 (1976).

## B. Safety and Related Privacy Interests

### B.I. LGBTQ and Gender-Minority Witness Interests (Non-Party and Non-Plaintiff Focus)

This section is primarily about witnesses and participants other than Plaintiff. Plaintiff's own grounds (transgender status, the DHS LGBTQIA+ threat bulletin, and the institutional hostility the complaints describe) are set forth in B.1–B.3. Plaintiff respectfully submits that those same grounds apply with equal or greater force to several other witnesses and non-parties whose identities would be exposed if the protections at issue are dissolved, and that those other individuals have less opportunity than Plaintiff has had to be heard on that question. The citations in B.4–B.6 identify those other individuals.

**B.1.** Plaintiff sought pseudonymity in part to avoid disclosure of his transgender status. 11490 Dkt. 54 pp. 1, 3; 11490 Dkt. 61 p. 1.

**B.2.** The Court recognized the sensitivity of that subject by ordering that references to Plaintiff's being transgender could be redacted or sealed. 11490 Dkt. 61 p. 2.

**B.3.** Plaintiff also cited a DHS threat bulletin identifying the LGBTQIA+ community as a target of potential violence. 11490 Dkt. 2-1 (Doe Decl.) at 2 ¶ 6.

**B.4. Other identified gender-minority witnesses.** The related record identifies at least one student witness or participant as "a woman Master's student and gender-minority individual," whose interests are bound up with the same laboratory, supervisor, and events and who has not herself appeared in this proceeding to speak to the consequences of unsealing or unmasking.

- 11935 Dkt. 15 at 18 (describing the supervisor's differential treatment of "a woman Master's student" relative to her male counterparts; linking the student to the same gender-minority context).
- 10949 Dkt. 1 at 10–11, 19 (same individual described in the re-filed federal complaint).
- Jane MCAD Charge at 31 (same individual identified in the agency record).
- Exhibit B, entry 17 (cross-index of the same individual across matters).

**B.5. Transgender non-party whose pseudonymity grounds were recognized by a related court.** The related federal record also reflects a transgender non-party whose safety-based pseudonymity motion was recognized as supported by "particularized fears of harm due to their transgender status." That non-party is unrelated to and distinct from Plaintiff.

- 10949 Dkt. 52-2 (Mar. 13, 2024 hearing tr.) at 10–11 (describing a non-party "transgender individual" and observing that "that's one of the categories that [has been] … protected in federal civil litigation," with a motion that "reflects a lot of precedent as to the safety and fears of transgender people" and that is "particularized here").
- 10949 Dkt. 52-2 at 11 (recognizing that such non-parties "have particularized fears of harm due to their transgender status in the ways that they have particularly described to that court").

**B.6. Application of Plaintiff's grounds to the other individuals.** The grounds supporting Plaintiff's own protection (status-based threat risk, institutional hostility to gender-minority workers, and the practical impossibility of unringing the bell once identification occurs) apply a fortiori to the other individuals identified above, who (unlike Plaintiff) have not appeared or been heard in this proceeding. 11490 Dkt. 2-1 (Doe Decl.) at 2 ¶ 6 (DHS threat bulletin); 11490 Dkt. 54 p. 5 (nonparty-identification concerns); 11490 Dkt. 66 p. 2 ("manifest injustice to nonparties"); *Doe v. MIT*, 46 F.4th 61, 69 (1st Cir. 2022) (irreversibility of disclosure).

### B.II. Crime-Victim Safety (Jane Smith)

**B.7.** Jane Smith is a cooperating witness in a federal criminal investigation involving death threats; she changed her name for safety reasons and refiled her claims in federal court in reliance on an order permitting her to proceed in that changed name. Her identity is ascertainable from sealed materials through disclosure of the respondent supervisor's real name. 10949 (generally); 11935 Dkt. 43 pp. 8–9.

**B.8.** Jane Smith may also have statutory privacy interests under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(1), (a)(8). She has not been heard from in this proceeding.

### B.III. Sexual-Assault Survivors

**B.9.** Plaintiff self-identifies as a survivor of sexual assault and abuse in the FAC; the record also reflects at least two individuals in the laboratory described as survivors. 11490 Dkt. 19 (FAC) ¶ 10; 11490 Dkt. 36 p. 2; Exhibit B, entries 1–9.

**B.10.** Jane Smith self-identified at the March 13, 2024 hearing as "a person who has experienced sexual assault... during part of my experience at MIT." 11935 Dkt. 43 at 11:1–10.

**B.11.** Plaintiff cited authority recognizing sexual-assault survivors as a category for which anonymity may be appropriate. 11490 Dkt. 36 pp. 13–14.

### B.IV. Persons Accused of Sexual Assault

**B.12.** The sealed documents identify individuals accused of sexual assault and sexual harassment who have not been charged with crimes. Those allegations may implicate criminal exposure and substantial privacy interests for both complainants and accused persons. 11490 Dkt. 69-1 ¶¶ 9(a), 9(e); *see also* Exhibit B, entries 10–13.

## C. Nonparty Privacy and FERPA

**C.1.** Plaintiff raised concern that proceeding under his own name would "improperly reveal the identities of students or other third parties." 11490 Dkt. 47 p. 5.

**C.2.** He further stated that information in this case and related proceedings could identify dozens of students and reveal sensitive information related to harassment and assault complaints. 11490 Dkt. 54 p. 5.

**C.3.** FERPA defines "personally identifiable information" to include information that "alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community... to identify the student with reasonable certainty." 34 C.F.R. § 99.3.

**C.4.** Plaintiff also alleged "manifest injustice to nonparties whose privacy interests could be substantially affected." 11490 Dkt. 66 p. 2.

**C.5.** Plaintiff further represented that other MIT complainants had previously been publicly identified in media coverage against their wishes. 11490 Dkt. 54 pp. 3–4.

**C.6.** Exhibit B identifies 54 individuals with potential privacy interests across related matters, including students, complainants, witnesses, confidential-process participants, and family members. *See, e.g.*, Exhibit B, entries 1–24, 27–38, 42–45.

## D. Chilling Effect on Reporting and Participation

**D.1.** Plaintiff alleged retaliation "for voicing concerns about perceived gender and sex discrimination against others in his lab." 11490 Dkt. 47 p. 1; 11490 Dkt. 54 p. 3; 11490 Dkt. 61 p. 2.

**D.2.** Plaintiff also argued that Title IX cases can implicate chilling of reporting and participation. 11490 Dkt. 36 p. 13.

**D.3.** *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712 (E.D. Va. 2015) (recognizing that opposition to anonymity may chill reporting of sexual misconduct); 11490 Dkt. 36 p. 13.

**D.4.** The sealed documents describe sexual misconduct, Title IX proceedings, and harassment complaints involving multiple complainants, witnesses, and accused persons. 11490 Dkt. 69-1 ¶¶ 9(a), 9(e); 11490 Dkt. 47 p. 5; *see also* Exhibit B, entries 1–24, 27–38.

**D.5.** Plaintiff's original pseudonym motion and declaration were filed ex parte and withheld from the opposing party for seven months. 11490 Dkt. 47 p. 2; 11490 Dkt. 2 (ex parte).

**D.6.** The same record also implicates the privacy interests of persons accused of sexual assault or sexual misconduct. 11490 Dkt. 69-1 ¶¶ 9(a), 9(e); Exhibit B, entries 10–13.

**D.7.** MIT has not opposed Volokh's access motions, and the record cited in the complaint alleges that MIT was itself responsible for maintaining confidentiality in these settings. 11490 Dkt. 94; 11490 Dkt. 19 (FAC) ¶¶ 6(d), 6(l), 38(d), 38(l); 20 U.S.C. § 1681 *et seq.*; 20 U.S.C. § 1232g.

## E. Confidential Proceedings

### E.I. MCAD / EEOC

**E.1.** Plaintiff's MCAD complaint is "no longer publicly available while in the investigatory stage" under 804 C.M.R. 1.02(4)(b); "EEOC records are never publicly disclosed." 11490 Dkt. 47 p. 6; 11490 Dkt. 54 pp. 5–6.

**E.2.** MIT attached a copy of the MCAD complaint to its sealed filing (11490 Dkt. 69-1), including Plaintiff's real name, home address, date of birth, telephone number, and identifying details of third parties. 11490 Dkt. 69 p. 3; 11490 Dkt. 69-1 (throughout).

**E.3.** Plaintiff was "in the process of exercising" his rights to maintain MCAD records as pseudonymous. 11490 Dkt. 54 p. 6.

**E.4.** MIT's placement of the MCAD complaint on this Court's docket furthers rather than cures the harm caused by MIT's own conduct. 20 U.S.C. § 1232g(b)(1); 34 C.F.R. §§ 99.31, 99.33.

### E.II. Internal Confidential Proceedings

**E.5.** Confidential internal MIT ombudsperson mediation; MIT's own representation is that the Ombuds Office "does not reveal the name of anyone who contacts the office, unless given explicit permission to do so." 10949 Compl. ¶ 87k.

### F. The Litigation Replicates the Harm Alleged; Right to Jury Trial

**F.1.** Plaintiff's Title IX claims specifically allege that MIT fails to protect workers' confidentiality in connection with discrimination complaints. Stripping pseudonymity in this litigation replicates the same type of institutional failure alleged in the case. 11490 Dkt. 19 (FAC) ¶¶ 6(d), 6(l), 38(d), 38(l).

**F.2.** MIT maintains internal confidentiality for misconduct accusations but opposes pseudonymity in litigation, which Plaintiff compares to the inconsistency identified in *George Mason*. 11490 Dkt. 36 p. 13; 11490 Dkt. 94.

**F.3.** Because the privacy violations at issue in the sealing and pseudonymity dispute overlap with the privacy violations alleged on the merits, Plaintiff argues that an irreversible pretrial ruling made before discovery would effectively decide a central merits issue. U.S. Const. amend. VII; 42 U.S.C. § 1981a(c).

## G. Irreversibility of Disclosure

**G.1.** Plaintiff argued that disclosure of his identity on the public docket would be difficult to reverse. *Doe v. MIT* likewise notes that once a litigant's true name is revealed on the public docket, the disclosure cannot readily be undone. 11490 Dkt. 36 p. 19; 11490 Dkt. 54 p. 1; *Doe v. MIT*, 46 F.4th 61, 69 (1st Cir. 2022).

**G.2.** MIT's own sealed exhibit (11490 Dkt. 47-1) included a social-media profile and specific tweet texts with dates and engagement metrics that Plaintiff characterizes as facilitating identification. 11490 Dkt. 47-1 pp. 2–4; 11490 Dkt. 54 p. 5.

**G.3.** The MCAD complaint attached as 11490 Dkt. 69-1 contains Plaintiff's real name, home address, date of birth, and telephone number, as well as the full name and telephone number of Plaintiff's supervisor. 11490 Dkt. 69-1 pp. 6, 10.

**G.4.** *Accord Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (once information is in the public domain, it cannot be retrieved).

## H. Changed Circumstances Since the Court's July 2024 Ruling

**H.1.** The Court's last ruling on pseudonymity and sealing was entered on July 22, 2024 (11490 Dkt. 61). Approximately twenty months have elapsed since. *See Doe v. MIT*, 46 F.4th at 69.

**H.2.** Since July 2024, Jane Smith has legally changed her name due to safety fears and refiled her claims in federal court in reliance on an order of Judge Young permitting her to proceed in her changed name; she is a cooperating witness in a federal criminal investigation involving death threats. 10949 (generally); 11935 Dkt. 43 pp. 8–9.

**H.3.** Since July 2024, Plaintiff's former supervisor has been designated by the pseudonym "John Roe" by order of another court in this District in active federal litigation. 10949 (caption); 11490 Dkt. 69-1.

**H.4.** Since July 2024, the related case (10949) has been filed and its record reveals additional confidential processes, including the ombudsperson mediation. 10949 Compl. ¶ 87k.

**H.5.** Documents ordered sealed in this case to protect information about Plaintiff and nonparties were unsealed without notice or docket entry while jurisdiction had transferred to the Court of Appeals. At least three documents (11490 Dkts. 57, 61, and 70) were unsealed without any docket notation, motion to unseal, or opportunity for affected parties to be heard. Plaintiff raised this in the appellate proceedings on April 4, 2025 and May 5, 2025. 11490 Dkt. 80 (Oct. 11, 2024); 11490 Dkt. 61; 11490 Dkt. 70; 24–1888 entries of 4/4/2025 and 5/5/2025.

**H.6.** The undocketed unsealing is a jurisdictional irregularity that must be resolved. 28 U.S.C. § 1291; *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

## I. No Public Right of Access to Names; Names Are Not Judicial Records

**I.1.** Many of the sealed documents are not discovery materials. They are filings related to a collateral pseudonymity dispute raised independently of the merits, before discovery has begun. Discovery materials do not carry a presumed right of public access; these documents, being even less than discovery materials, carry no such presumption. 11490 Dkts. 2, 36, 53, 54, 66 (pre-discovery filings on pseudonymity).

**I.2.** Intervenor Volokh's cited authorities address judicial records in the traditional sense; the sealed filings here are protective submissions made precisely to allow the Court to evaluate pseudonymity and sealing without causing the harm the protection is meant to prevent. 11490 Dkt. 80.

**I.3.** *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022); *see also Doe v. Town of Lisbon*, 78 F.4th 38 (1st Cir. 2023) (addressing the interaction between pseudonymity and the public-access presumption).

## J. First Amendment Procedural Requirements

**J.1.** When First Amendment rights are at stake, procedural protections require findings and conclusions sufficient to permit meaningful de novo review. *Freedman v. Maryland*, 380 U.S. 51, 58–59 (1965); *Doe v. MIT*, 46 F.4th at 69.

## K. Supervisory Rulemaking Limitations

**K.1.** While FERPA imposes obligations on schools rather than on courts, the First Circuit in *Doe v. MIT* recognized that background confidentiality regimes such as FERPA and Title IX are relevant to the court's analysis, even where the court is not directly bound by those statutes. *Doe v. MIT*, 46 F.4th 61, 72 (1st Cir. 2022).